2022R001002/ALW

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Edward S. Kiel |
| | : | |
| v. | : | Magistrate. No. 24-15067 |
| | : | |
| MARK CSANTRAVERI | : | **CRIMINAL COMPLAINT** |

I, Joseph Sullivan, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

## SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

s\Joseph Sullivan
_____
Joseph Sullivan, Special Agent
Federal Bureau of Investigation

Special Agent Sullivan attested to this Affidavit by telephone pursuant to F.R.C.P. 4.1(B)(2)(A) on this 20th day of March, 2024.

s\Honorable Edward S. Kiel\ js
_____
Hon. Edward S. Kiel
United States Magistrate Judge

2022R001002/ALW

## ATTACHMENT A

From in or around March 2018 through in or around December 2023, in the District of New Jersey, and elsewhere, the defendant,

## MARK CSANTAVERI,

did knowingly and intentionally conspire and agree with others, known and unknown, to devise a scheme and artifice to defraud and to obtain money and property, by means of one or more materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice, to knowingly transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, and sounds, contrary to Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1349.

## ATTACHMENT B

I, Joseph Sullivan, a Special Agent of the Federal Bureau of Investigation ("FBI"), having conducted an investigation and having discussed this matter with other law enforcement officers who have participated in this investigation, have knowledge of the following facts. Because this Complaint is being submitted for a limited purpose, I have not set forth every fact that I know concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause. Unless specifically indicated, all dates described in this affidavit are approximate and all conversations and statements described in this affidavit are related in substance and in part.

### Overview

1. The defendant MARK CSANTAVERI ("CSANTAVERI") conspired with others to defraud small-business owners who had fallen behind on debt obligations. CSANTAVERI and his co-conspirators—operating through various businesses—falsely promised these victims that, in exchange for regular payments, they would settle the victims' debts. But instead of using the victims' money as promised, CSANTAVERI and his co-conspirators transferred most of the funds into their personal bank accounts. As a result of the scheme, CSANTAVERI and his co-conspirators defrauded over 50 small businesses out of over $3 million, and they spent their fraud proceeds on personal expenses.

### Relevant Entities and Individuals

2. At various times relevant to this Complaint:

   a. CSANTAVERI resided in Morristown, New Jersey.

   b. Co-Conspirator-1 resided in Morristown, New Jersey.

   c. Co-Conspirator-2 resided of Lake Hopatcong, New Jersey.

   d. CSANTAVERI, Co-Conspirator-1, and Co-Conspirator-2 were associated with corporate entities that advertised consolidation, restructuring, and relief services to small businesses, as follows:

      i. MCA Cure, LLC ("MCA Cure") was a New Jersey corporation, with a registered office in Parsippany, New Jersey. Co-Conspirator-1 was the registered agent of MCA Cure from on or about October 5, 2018 to on or about January 11, 2022. MCA Cure maintained a website advertising that it would "us[e] a proven proprietary debt restructuring system alongside our bulk settlement process . . . to provide you with significant relief on your

      business debt." The website claimed that "MCA-CURE has helped thousands of companies lower their loan payments up to 80%."

  ii. LDMS Group, LLC ("LDMS") was a New Jersey corporation, with a registered office in Parsippany, New Jersey. Co-Conspirator-1 was the registered agent of LDMS from on or about February 20, 2020 to on or about January 11, 2022. LDMS maintained a website that advertised debt relief services and described LDMS as a "leading Business Debt Settlement company" that would "use proven proprietary debt restructuring systems alongside our bulk settlement processes to create a plan . . . . to provide you with significant relief on your business debt." The website also claimed that "LDMS has helped thousands of companies lower their loan payments up to 80%."

  iii. Evergreen Settlement Group LLC ("Evergreen") was a New Jersey corporation, with a registered office in Rockaway, New Jersey. Co-Conspirator-2 was the registered agent of Evergreen from on or about June 9, 2021 to in or around March 2024. Evergreen maintained a website that advertised business debt settlement services claiming that it could help customers to, among other things, "Reduce Amount of Debt Owed," "Reduce The Size Of Payments," and "Regain Company Solvency."

e. Victim-1 was a company that operated a restaurant in College Park, Maryland. On or about November 3, 2020, Victim-1 entered into a debt consolidation agreement with MCA Cure.

f. Victim-2 was a manufacturing company in Dayton, Ohio. On or about April 7, 2021, Victim-2 entered into a debt consolidation agreement with LDMS.

g. Victim-3 was an auto body shop in Clinton Township, Michigan. On or about April 4, 2023, Victim-3 entered into a debt consolidation agreement with Evergreen.

h. Creditor-1 was a small business lender in Corpus Christi, Texas, and Creditor-2 was a small business lender in Doral, Florida.

## The Conspiracy

### *MCA Cure*

3. Victim-1 had fallen into debt during the COVID-19 pandemic, which included owing Creditor-1 over $200,000. In or around November 2020, CSANTAVERI contacted Victim-1's owner and said that MCA Cure could work on Victim-1's behalf to settle its debts and save Victim-1 forty to fifty percent of what it owed.

4. On or about November 3, 2020, Victim-1 entered into a contract with MCA Cure. Under the terms of the contract, Victim-1 would pay MCA Cure approximately $4,150 every two weeks for two years, for a total of approximately $215,000. CSANTAVERI told Victim-1's owner that MCA Cure would retain the money while it negotiated settlements with Victim-1's creditors.

5. On or about December 24, 2020, Victim-1 made its first payment of approximately $4,150 to MCA Cure.

6. From in or around November 2020 to in or around October 2022, CSANTAVERI repeatedly made false and fraudulent statements to Victim-1's owner about MCA Cure purportedly being in the process of negotiating debt settlements on Victim-1's behalf. For example, on or about October 3, 2022, in response to Victim-1's requests for an update about debt negotiations with Creditor-1, CSANTAVERI falsely claimed by email, "We were told [by Creditor-1] we would have a solid answer before noon tomorrow. Will make sure to have a figure to discuss at that time." In reality, however, CSANTAVERI and MCA Cure never contacted or communicated with Creditor-1 about Victim-1's debt.

7. In or around November 2022, after receiving repeated excuses from CSANTAVERI, Victim-1's owner directly contacted Creditor-1 and learned that CSANTAVERI and MCA Cure had never engaged with Creditor-1. Victim-1 then ceased payments to MCA Cure and, on or about November 10, 2022, settled its debt with Creditor-1 without assistance from MCA Cure.

8. In total, CSANTAVERI caused Victim-1 to pay MCA Cure approximately $149,400. Instead of using that money to pay down Victim-1's debts as promised, CSANTAVERI and Co-Conspirator-1 fraudulently transferred the funds to their own personal bank accounts.

### *LDMS*

9. In or around April 2021, CSANTAVERI contacted Victim-2's owner and falsely stated that LDMS could negotiate settlements with Victim-2's creditors to reduce Victim-2 debt obligations. Based on those and other false and fraudulent representations, Victim-2 entered into an agreement with LDMS on or about April

- 4 -

7, 2021. Under the terms of the agreement, Victim-2 would pay approximately $4,950 to LDMS every two weeks and LDMS would purportedly negotiate settlements with Victim-2's creditors.

10. After Victim-2 made several payments to LDMS, its owner learned from Victim-2's creditors that LDMS had never contacted any of the creditors on Victim-2's behalf. Victim-2 subsequently settled its outstanding debts to its creditors without assistance from LDMS.

11. In total, based on CSANTAVERI's false and fraudulent claims, Victim-2 paid LDMS approximately $25,745. LDMS never made a payment on Victim-2's behalf to any creditors and instead fraudulently transferred funds to CSANTAVERI's and Co-Conspirator-1's personal bank accounts.

*Evergreen*

12. In or around March 2023, CSANTAVERI contacted Victim-3's owner and falsely claimed that Evergreen was a debt relief business that settled debts with its clients' creditors for pennies on the dollar. At the time, Victim-3 owed approximately $321,318 to four creditors, including Creditor-2.

13. On or about April 4, 2023, based on CSANTAVERI's false and fraudulent representations, Victim-3 entered into an agreement with Evergreen to pay Evergreen approximately $4,200 every two weeks for approximately two years.

14. On or about September 8, 2023, in response to Victim-3's request for an update on debt negotiations with Creditor-2, CSANTAVERI responded, "[I]t's going very well so far"; later in the day, he added, "[W]e are only waiting for the attorney to call back saying yes or no to the settlement . . . im sure it's a yes . . ." But in truth, CSANTAVERI and Evergreen never contacted Creditor-2.

15. After paying Evergreen a total of approximately $37,800, Victim-3— without Evergreen's help—ultimately settled its debts with four creditors. Evergreen never made any payments to any of Victim-3's creditors. Instead, CSANTAVERI and his co-conspirators caused Victim3's funds to be fraudulently transferred from Evergreen's accounts to CSANTAVERI's and Co-Conspirator-2's personal bank accounts.

* * *

16. CSANTAVERI, Co-Conspirator-1, and Co-Conspirator-2, spent money they diverted from MCA Cure, LDMS, Evergreen on personal expenses. Among other things, CSANTAVERI spent approximately $1.3 million of victims' funds at casinos in New Jersey and elsewhere.

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Jersey

| United States of America | ) |
|---|---|
| v. | ) |
| MARK CSANTAVERI | ) Case No. 24-15067 |
| | ) |
| | ) |
| | ) |
| | ) |
| *Defendant* | |

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)* Mark Csantaveri,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment  ☐ Superseding Indictment  ☐ Information  ☐ Superseding Information  ☐ Complaint
☐ Probation Violation Petition  ☑ Supervised Release Violation Petition  ☐ Violation Notice  ☐ Order of the Court

This offense is briefly described as follows:

Title 18, United States Code, Sections 1343, (wire fraud), 1349 (conspiracy to commit wire fraud), and 1957 (money laundering)

Date: 3/19/2024

s\Honorable Edward S. Kiel\js
*Issuing officer's signature*

City and state: Newark, New Jersey

Hon. Edward S. Kiel, U.SM.J.
*Printed name and title*

| **Return** |
|---|
| This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____ at *(city and state)* _____. |
| Date: _____  Arresting officer's signature _____ |
| Printed name and title |

AO 442  (Rev. 11/11)  Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: Mark Csantaveri
Known aliases:
Last known residence: 190 South Street, Apartment 302, Morristown, New Jersey, 07960
Prior addresses to which defendant/offender may still have ties:

Last known employment: Evergreen Settlment Group
Last known telephone numbers:
Place of birth: New Jersey
Date of birth: 12/19/1972
Social Security number: 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
Height: 6'   Weight: 185
Sex: Male   Race: White
Hair: None   Eyes: Hazel
Scars, tattoos, other distinguishing marks:

History of violence, weapons, drug use:

Known family, friends, and other associates *(name, relation, address, phone number)*:

FBI number: 22645MC4;  SBI No.: NJ593955D
Complete description of auto: Mercedes Benz, 2007, S500, blue, VIN: WDDNG71X77A068540

Investigative agency and address: FBI, Joseph Sullivan, 3 Garret Mountain Plaza, Woodland Park, NJ 07424, (862) 373-3006

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*:

Date of last contact with pretrial services or probation officer *(if applicable)*:

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Edward S. Kiel |
| | : | |
| v. | : | Magistrate. No. 24-15067 |
| | : | |
| MARK CSANTAVERI | : | **SEALING ORDER** |

This matter having been brought before the Court upon application of Philip R. Sellinger, the United States Attorney for the District of New Jersey (Aaron Webman, Assistant U.S. Attorney, appearing), for an order sealing the Complaint and Arrest Warrant issued on this date against Defendant Mark Csantaveri, and for good cause shown,

IT IS on this 19 th day of March, 2024,

ORDERED that, except for such copies of the Arrest Warrant as necessary to accomplish its purpose, the Complaint, Arrest Warrant, and this Order are SEALED until the Arrest Warrant is executed or until further order of the Court, and it is further

ORDERED that, once the Arrest Warrant is executed, the Complaint, Arrest Warrant, and this Order are unsealed.

s\Honorable Edward S. Kiel\ js

_____
HON. EDWARD S. KIEL
U.S. MAGISTRATE JUDGE